UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK A. SHANNON<br><br>Plaintiff,<br><br>-against-<br><br>DELTA AIR LINES, INC.,<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

MARK A. SHANNON ("Plaintiff") by and through his attorneys, Turturro Law P.C., as for his Complaint against defendant Delta Air Lines, Inc. ("Delta"), alleges, upon knowledge as to himself and his own actions and upon information and belief as to all other matters, as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for employment discrimination, retaliation, and wrongful termination in violation of federal and state law.

2. Plaintiff Mark A. Shannon, a former Flight Attendant with Delta Air Lines, Inc. ("Delta"), was subjected to unlawful discrimination and severe retaliation after he reported safety violations to his employer and the Federal Aviation Administration (FAA) and filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).

3. The retaliation included being held personally responsible for travel costs after a mandatory evacuation from a conflict zone, being suspended, and ultimately being discharged from his employment.

1

4. Plaintiff brings this action to seek injunctive relief, back pay, compensatory damages, punitive damages, and attorneys' fees and costs.

## II. PARTIES

5. Plaintiff Mark A. Shannon is an adult resident of New York, NY.

6. Defendant Delta Air Lines, Inc., is a corporation that operates as an air carrier, with a primary address in Atlanta, GA. It is an employer engaged in an industry affecting commerce and employs more than 501 people. Delta maintains a presence and conducts business within the Eastern District of New York, including operating flights out of JFK airport, where Plaintiff was based.

## III. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343(a)(4) (Civil Rights).

8. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claim occurred in this district, including the Plaintiff's base of employment (NYCIFS/JFK), and the retaliation (suspension and discharge) which prevented him from departing on a flight from JFK.

## IV. ADMINISTRATIVE EXHAUSTION

10. The discriminatory acts began on or about May 5, 2025, with the latest discriminatory act (discharge) occurring on September 8, 2025.

11. On or about July 30, 2025, Plaintiff filed an initial employment discrimination inquiry with the EEOC.

12. On September 23, 2025, Plaintiff filed a formal Charge of Discrimination (EEOC Charge No. 410-2025-12909) with the EEOC alleging discrimination based on Race (African American) and Retaliation.

13. On September 23, 2025, the EEOC issued a Notice of Right to Sue on request, stating it was unlikely the investigation would be completed within 180 days.

14. This action is being filed within 90 days of the Plaintiff's receipt of the Notice of Right to Sue.

15. This action is also being filed under the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (AIR21), 49 U.S.C. § 42121, for which administrative remedies were also pursued and are permitted to be addressed in this forum following the administrative process.

## V. FACTS

16. Plaintiff, Mark A. Shannon, was employed by Delta Air Lines, Inc. as a Flight Attendant beginning on February 22, 2016.

17. On May 4, 2025, Plaintiff was on a Delta flight to the Ben Gurion Airport in Tel Aviv, Israel ("TLV") as a Flight Attendant when missiles were reportedly flying overhead as the aircraft landed, followed by sirens.

18. The captain of this Delta flight had recorded an eight second video of this incident and showed it to the flight attendants who requested it, which included Plaintiff who was sent a copy of the video.

19. Plaintiff immediately became afraid and distressed having seen the video, which replayed over and over in his head.

20. Upon information and belief, in response, TLV suspended air traffic and ground access (road and rail) while emergency personnel cleared the area and checked the runways for debris.

21. Following the incident, the Delta crew (including Plaintiff) were advised to stay in a bomb shelter for two hours and then advised to return to New York (JFK).

22. While in the bomb shelter, local residents were educating the Plaintiff that they were desensitized to the attacks as they occur frequently with one explaining to Plaintiff that she witnessed her friend die in a bus explosion and another saying she witnessed a car bomb in front of her and shrapnels flying all over.

23. Hearing this further distressed Plaintiff who then explained to Delta HQ (crew scheduling) that he was tired and fatigued and wanted to go rest at a local hotel instead of returning to JFK.

24. Accordingly, Plaintiff refused to deadhead on the return flight, citing fear and fatigues, having completed an 11-hour flight and being beyond the maximum allowable duty period without the minimum rest mandated by FAA regulations, and general safety/health concerns due to the active conflict and missile activity near the airport.

25. Despite this being a "mandatory evacuation," the crew was deadheaded back to JFK in a non-working capacity.

26. When Plaintiff advised Base Manager Ileana Bonfante that he would not return on the flight, she informed him he would be responsible for purchasing his return flight ticket,

hotel, and taxi cost. Plaintiff was told to purchase a hotel, taxi, and flight home (TLV-JFK) by Ileana.

27. Plaintiff returned to New York two days later.

28. The adverse action against Plaintiff began with the denial of "EVENT pay" for a traumatic event on May 5, 2025. Plaintiff alleges his crew members, including one named Mustafa, received "EVENT pay" for subsequent trips after the traumatic event, but he did not.

29. Plaintiff complained to upper management about this alleged discrimination, and nothing was done.

30. Plaintiff alleges Ileana Bonfante retaliated against him and continues to do so, including being treated unfairly when he went beyond his duty day and timed out in TLV.

31. Plaintiff's initial protected activity involved contacting the EEOC and FAA and complaining internally about job discrimination and safety concerns.

32. The retaliation intensified on August 12, 2025:
    - Plaintiff was requested to attend a private meeting with Juan Mapalad prior to his scheduled flight.
    - Mr. Mapalad assured Plaintiff he would still be able to continue on his trip and that the purpose of the meeting was to issue the $3,500 owed to him.
    - Plaintiff was unexpectedly suspended, his badge and SkyPro were confiscated, and he was denied the opportunity to take leave.
    - Plaintiff was told the suspension was tied to his actions of contacting the EEOC and FAA, which he believes constitutes clear and unlawful retaliation.

33. On September 8, 2025, Plaintiff was discharged from his employment.

34. Plaintiff was advised by his manager, Halemah Simpson, that the discharge was for: "failing to show safety protocols, refusing to demonstrate respect and professionalism towards leadership, action jeopardizing the safety and cohesion of the remaining crew, misled an investigation, and uncooperative with leadership to participate in a security debrief of a serious incident".

35. Plaintiff asserts that the stated reasons for his discharge are pretext for unlawful race discrimination and retaliation for his protected activity, including refusing to violate FAA regulations for safety reasons and filing complaints with the EEOC and FAA.

## VI. CAUSES OF ACTION
### FIRST CAUSE OF ACTION: RACE DISCRIMINATION (TITLE VII)

36. Plaintiff Mark A. Shannon is African American (based on his claim of Race and Color discrimination).

37. Plaintiff was a qualified employee performing his job duties in a satisfactory manner.

38. Plaintiff suffered adverse employment actions, including denial of "EVENT pay", suspension, and termination.

39. These adverse actions were taken against the Plaintiff due to his race and color.

40. The reasons offered by Delta for its actions are a pretext for unlawful race discrimination.

### SECOND CAUSE OF ACTION: RETALIATION (TITLE VII)

41. Plaintiff engaged in protected activity under Title VII by:
    - Complaining to upper management about alleged job discrimination (denial of EVENT pay).
    - Contacting a government agency (EEOC and FAA) to complain about job discrimination and safety concerns.

6

- Filing a charge of job discrimination with the EEOC.

42. Defendant was aware of Plaintiff's protected activity.

43. Defendant subjected Plaintiff to materially adverse employment actions, including:

    - Being told he would be personally responsible for costs related to a mandatory evacuation.
    - Being suspended.
    - Being discharged.

44. There is a causal connection between the protected activity and the adverse actions, which is demonstrated by the close temporal proximity of his August 12, 2025 suspension, which was explicitly tied to his contacting the EEOC and FAA, and his ultimate termination on September 8, 2025.

45. The reasons offered by Delta for its actions are a pretext for unlawful retaliation.

### THIRD CAUSE OF ACTION: WHISTLEBLOWER RETALIATION (AIR21)

46. Plaintiff engaged in protected activity under AIR21 (49 U.S.C. § 42121) by:

    - Refusing to deadhead on the return flight from TLV - a refusal based on a reasonable belief that doing so would violate FAA duty time and rest regulations, and would compromise safety due to operational fatigue and the active conflict zone.
    - Providing information to Delta and the Federal Government (FAA) relating to a violation or alleged violation of an order, regulation, or standard of the FAA related to aviation safety.

47. Defendant was aware of Plaintiff's protected activity (e.g., the refusal to fly, the internal and FAA complaints).

7

48. Plaintiff was discharged and suffered other adverse employment actions (e.g., being held financially responsible for return travel, suspension).

49. Plaintiff's protected activity was a contributing factor in the adverse employment actions.

50. Defendant cannot demonstrate by clear and convincing evidence that it would have taken the same adverse action in the absence of the protected activity, and the stated reasons for discharge are pretextual.

### FOURTH CAUSE OF ACTION: RETALIATION (NEW YORK STATE HUMAN RIGHTS LAW)

51. Plaintiff repeats and realleges the allegations in the preceding paragraphs.

52. Defendant retaliated against Plaintiff by subjecting him to adverse employment actions, including suspension and termination, because he opposed or complained about unlawful discriminatory practices (race/color discrimination) and due to his good-faith refusal to violate safety regulations.

53. This retaliation constitutes a violation of the New York State Human Rights Law, N.Y. Exec. Law § 296.

### VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mark A. Shannon respectfully requests that this Court enter judgment against Defendant Delta Air Lines, Inc. and grant the following relief:

    a. A declaratory judgment that the Defendant's actions violated Title VII, AIR21, and the New York State Human Rights Law.
    b. An award of back pay and front pay with pre-judgment and post-judgment interest.

c. An award of compensatory damages for emotional distress, humiliation, pain and suffering, and other pecuniary losses.

d. An award of punitive damages against the Defendant for its malicious and/or reckless conduct.

e. An award of litigation costs, including reasonable attorneys' fees and expert witness fees. f. Such other and further relief as the Court deems just and equitable.

Dated: December 22, 2025
Staten Island, NY

Yours, etc.

**TURTURRO LAW, P.C.**
By: /s/ Natraj S. Bhushan, Esq.
1361 N. Railroad Avenue
Staten Island, NY 10306
Tel: (718) 384-2323
Fax: (718) 384-2555
natraj@turturrolawpc.com
*Attorneys for Plaintiff*